103　477
113　463
103　477
f126　109
103　477
139　³229

# THE WESTERN ELECTRIC COMPANY v. GEORGE A. HART.

*Bills and notes—Fraud—Waiver—Rescission.*

1. With full knowledge of the falsity of certain representations made by the agent of an electric company as an inducement to the organization of an electric light and power company, the latter company entered into a contract with the electric company for the enlargement of its plant and a change in its system of lighting, and its president, with full knowledge of the facts, guaranteed the notes of his company given in payment for the materials furnished under said contract. In a suit upon said guaranty the president sought to show said representations as a defense. And it is held that the testimony was properly excluded.

2. The defendant claimed that plaintiff's agent represented that certain profits could be made by enlarging the capacity of the plant, and objected to paying the guaranteed notes because such profits were not made. It appeared that plaintiff, prior to the execution of the contract and the guaranteeing of the notes, wrote the defendant that it could not guarantee that the result would equal the agent's estimates, and that stockholders must take their own risks. And it is held that the

defendant had no right to rely upon the agent's representations.

3. The defendant, with knowledge that no profits were being made, asked for and received extensions of time for the payment of the notes, and wrote plaintiff that he was negotiating a sale of the whole plant, and, if he succeeded, he would take the entire stock and bonds held by the plaintiff. And it is held that the case is ruled by *Wylie v. Gamble*, 95 Mich. 564; that, if defendant desired to rescind on the ground of fraud, it was his duty, upon discovering the facts, at once to announce his purpose to do so, and to adhere to it.

Error to Manistee. (Judkins, J.) Argued October 26, 1894. Decided January 4, 1895.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Smurthwaite & Fowler,* for appellant.

*George L. Hilliker,* for plaintiff.

LONG, J. This action is to recover against defendant, as guarantor, the amount of a certain promissory note, of $1,199.67, made by the Citizens' Electric Light & Power Company to the plaintiff, and dated March 15, 1892. Three notes were given at the same date (two for $1,000 each, and the note in suit), all signed by the Citizens' Electric Light & Power Co., Manistee, Mich., George A. Hart, president, and Louis E. Morris, secretary. The following written guaranty was executed and delivered simultaneously with the notes:

"I hereby guarantee the payment at maturity of the following notes given by the Citizens' Electric Light & Power Company, Manistee, Mich., to the Western Electric Company, Chicago, Ill.: Three notes, all dated March 15, 1892, and bearing 6 per cent. interest,—two for $1,000 each, one due June 15, 1892, and the other due July 15, 1892; one for $1,199.67, due August 15, 1892.

"GEO. A. HART."

The plea is the general issue, with notice that the guar-

anty of the note was made pursuant to a certain contract, dated January 6, 1892, and that the execution of the contract and guaranty was, so far as the defendant was concerned and became a party thereto, procured by fraud on the part of plaintiff. This contract was between the Citizens' Electric Light & Power Company, party of the first part, the Western Electric Light Company, party of the second part, and George A. Hart, party of the third part. It admits an indebtedness of first party to second party, under former contracts, of $14,604.02. By the terms of the contract, second party was to furnish first party a steam plant, dynamos, incandescent lamps, wire, etc., for the sum of $9,210; first party to pay or secure the old debt of $14,-604.02, and the $9,210, or a total indebtedness of $23,-814.02, in the following manner:

1. To issue its bonds for $15,000, the principal payable in 10 years, with interest payable semi-annually at 6 per cent., $14,000 of which bonds were to be delivered to second party.

2. Second party to subscribe for $5,000 of the capital stock of first party, and such stock to be taken as full payment of $5,000 on such indebtedness.

3. To secure the payment of the balance of $4,814.02, five notes were to be given, running one, two, three, four, and five months from January 15, 1892; that is, four notes of $1,000, and the last one of $814.02, bearing interest at 6 per cent.

4. The third party to indorse on said notes his individual guaranty of payment at maturity; and, in the event of being compelled to pay them, he further agreed to accept from first party, in satisfaction thereof, an equal amount of first party's capital stock, at par.

It appears that the bonds were issued, the stock turned over to second party, and the notes made and indorsed, as agreed in the contract.

The notice attached to the plea states that prior to the making of this contract an agent of the plaintiff came to the city of Manistee, and organized the Citizens' Electric

Light & Power Company, and represented that it would be a profitable investment, and made certain statements, showing large dividends that would be paid upon the stock and upon the investment, and thereby secured a large number of subscribers, the defendant subscribing for $800 of the stock by deeding a lot for the plant, the agent of the plaintiff company pledging that the plaintiff would stand by the company, and furnish and supply it with all things necessary to make its plant profitable, good, and substantial; that the company started with an arc lighting system, and after running for a short time it was found that the representations made were untrue; that plaintiff then sent an expert to Manistee, who represented to the stockholders that if the company would purchase a large amount of supplies from plaintiff, enlarge the capacity, and put in an incandescent lighting system, very large profits would accrue to the stockholders; that the agent made certain statements in writing, showing that by adopting the course suggested by him a net profit of $344 per month would accrue to the company, which statements the officers and stockholders and defendant, Hart, believed and relied upon, in making the contract above set forth, but which were false, and were so made with intent to deceive and defraud the company and defendant, Hart; that at that time, and as a further inducement to the defendant to guarantee said notes, said agent assured him that the profits would pay said notes, and, even if defendant should pay them, the stock received would be worth much more than the money so paid; that said agent, as a further inducement to the signing of the notes by defendant, assured him that the plaintiff would extend to the company unlimited credit, to keep its plant in excellent order, and would do all things in its power to place the company upon a solid basis and sound financial standing, all of which statements were untrue; that, after running the

plant in an economical manner, no profits have been realized, and the company has been unable to pay said notes, except one, which was paid by borrowing the money by the indorsement of defendant; that as soon as the notes were secured, and the indorsement of defendant made upon them, the plaintiff refused to do anything further for the company, refused to sell or deliver anything to it unless it was shipped "Collect on delivery," and has wholly ignored all its pledges, promises, and assurances; that the company has been unable to pay any of its indebtedness, principal or interest, and is now threatened by plaintiff with proceedings to foreclose its mortgage; and defendant therefore insists that his indorsement was procured through fraud, and without consideration.

On the trial the defendant was called as a witness in his own behalf, and asked to state what was said by plaintiff's agent, at the time of his first coming to Manistee to organize a company, in regard to the working and prospective success of the proposed corporation. This was objected to for the reason that defendant had entered into another contract, of January 6, 1892, while the statements referred to related to the time of the organization of the company. The court sustained this objection, stating that—

"When defendant signed this contract, he closed his mouth against all that took place prior to that. He admits the organization and indebtedness of the company, and admits that it had not been doing a profitable business, and wanted more goods, and, to buy them, he gave his notes, and guaranteed the payment; and this defendant makes no complaint whatever, and I don't think it lies in his mouth to raise the question at all. I am satisfied on that, and, unless you have more proof, I will strike the entire defense out. I think it is too far fetched to admit of any controversy, and that there is no merit in it; and I shall sustain the objection."

The exception to this ruling raises the first question in

controversy. We think the court properly held this testimony incompetent. It appears conclusively that the defendant knew at the time he entered into the second contract all the facts that he claimed, on the trial, constituted the fraud. The representations were made before the second contract was entered into, and yet, with full knowledge that these representations were not true in fact, he entered into the second arrangement. By this new agreement, he lost his right to complain of the prior transactions. *Craig v. Bradley,* 26 Mich. 353, 369; *Dailey v. King,* 79 Id. 568.

It is next contended that the court was in error in taking the case from the jury. The defendant was permitted to go fully into the case, and his testimony, together with his letters which were introduced in evidence, show that he did not claim that any fraud had been perpetrated upon him until about the time suit was brought upon the note; and the only claim of fraud now made is that plaintiff's agent, Ellicott, represented that certain profits could be made by extending the capacity of the plant. Because these profits were not made, defendant objects to paying the note. It appears, however, that the Citizens' Company was managed by the defendant, as president, with a secretary and superintendent. At the time the estimates for the new arrangement were made, Ellicott was then acting as plaintiff's agent. Plaintiff, in sending the estimates forward, on December 30, 1891, which was seven days before the execution of the second contract, speaking of the showing made by the estimates, stated:

" On this showing, you should have no difficulty in placing the stock. Of course, we cannot guarantee that the result will equal Mr. Ellicott's estimates, but they seem to us to be carefully and correctly made. Stockholders must take their own risk, however."

In view of this statement, it cannot be said that the

defendant had a right to rely upon Ellicott's representations as to profits. But, aside from this, it appears that the defendant, after knowing all the facts, and that no profits were being made, began asking for extensions of time upon the notes, and as late as October, 1892, he wrote the plaintiff that he was negotiating a sale of the whole plant, and if he succeeded he would take the entire of plaintiff's stock and bonds. We think the case falls within the rule of *Wylie v. Gamble*, 95 Mich. 564. If defendant desired to rescind on the ground of fraud, it was his duty, upon discovery of the facts, at once to announce his purpose to do so, and to adhere to it.

Judgment affirmed.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.