MORGAN v. NOWLIN.                                    105

MORGAN v. NOWLIN.

SALE—ACTION FOR PRICE—DEFENSES—FRAUD—WAIVER.

> One who purchases stock in a corporation, giving the note of a
> third person, indorsed by him, in payment, and holds the
> stock for two years without raising the claim that he was de-
> frauded in the sale, during which time he participates actively
> in the affairs of the corporation, indorses several notes in
> renewal of the one originally given, and finally unites with
> the other stockholders in selling the corporate property and
> dividing the proceeds, of which he receives his share, must
> be held, in an action on the last renewal note, to have
> waived any defense thereto based upon the fraudulent repre-
> sentations of the seller.

Error to Wayne; Waite, J. Submitted June 8, 1900.
Decided March 26, 1901.

*Assumpsit* by Benjamin B. Morgan against Allen L.
Nowlin and James T. Hurst upon a promissory note.
From a judgment for plaintiff on verdict directed by the
court, defendant Nowlin brings error. Affirmed.

*J. H. Cole* ( *Harrison Geer*, of counsel ), for appellant.

*Maybury & Lucking*, for appellee.

HOOKER, J. On December 31, 1894, a corporation
called the Morgan Signal Company was organized. Sub-
sequently Nowlin purchased from the plaintiff 2-12 of its
stock, giving in payment therefor $400 in cash, and a note
made by one Hurst for $2,000, indorsed by Nowlin. This
note was renewed several times. Nowlin entered actively
into the business of the company, which continued over
two years. At the end of that time he united with other
members of the company in a sale of the property, for
which $2,000 was received. The interest on the note was
paid from time to time, also $200 of the principal. An

action having been brought upon the renewal note, Hurst made no defense; but Nowlin filed a plea of the general issue, accompanying it by a notice alleging that there was fraud in the sale, in representations made which the defendant afterwards learned were false, and that "defendant has never received a dollar in profits out of said corporation, and has received no consideration whatever for the $2,400 invested by him in said corporation at the instigation of the plaintiff." Upon the trial the circuit judge directed a verdict for the plaintiff, and error is brought by defendant Nowlin.

By no stretch of imagination can this notice be called one in recoupment. It does not mention recoupment, nor is there a word indicating a claim for damages. It simply alleges that there was no consideration for the price paid for the stock. The uncontradicted testimony shows that there was a valuable consideration. The company had patents and property, and it was afterwards sold for $2,000 with the approval of Nowlin. It is manifest, therefore, that the defense of want of consideration failed.

If, as defendant claims, he was defrauded in such sale, he had his choice of two courses: He might, when he discovered the fraud, rescind the contract and tender back what he had received, and this would give him the right to sue for and recover the price paid, or successfully defend an action for the price; or he might keep the property, and sue for or recoup the damages suffered,—a resort to one or the other remedy depending upon whether he had paid for the stock or not. There is no claim that the defendant has attempted to comply with the law as to rescission. Aside from the question whether he has not voluntarily affirmed the contract, by neglecting to give notice of rescission and return the property after discovery of the fraud, he has sold the property of the company and received the money for it. One cannot retain the property or its avails, and then sue for the balance, though he may perhaps retain it and sue for or recoup the *damages* in a proper proceeding. Tiff. Justice's Guide, 704, 275.

Were there a notice of recoupment in this case, such a defense might be made here; but there is not, and the injustice of permitting defendant to set up the fraud as a complete defense to the note, and at the same time keep the property, is obvious. Were this case here upon a notice of recoupment, it would then become important to inquire whether the claim for damages has been waived, as it may have been. *Wildey* v. *School District*, 25 Mich. 419. But the question of damages is not in the case. Neither is rescission. And the alleged want of consideration is clearly disproved by all of the testimony.

The judgment should be affirmed.

MOORE, J., concurred with HOOKER, J.

GRANT, J. (*concurring*). I think the court below made a correct disposal of this case, for the reasons stated in its instructions to the jury. It is very doubtful if defendant Nowlin was deceived by any representations which were made to him. He testified that the stock had been offered to him a year before he bought, that he talked with different parties before he bought, that he saw one of the signals in operation in Ypsilanti before he bought, and that, the last he knew of it, it was operating all right. He purchased the stock, and gave the note of Mr. Hurst, indorsed by himself, in part payment therefor, in the spring of 1896. He soon after became a director, and afterwards president. The note was several times renewed, and interest and part of the principal paid. In one portion of his testimony he testified:

"I was simply sold stock there on certain representations that they had a fair prospect of going on and doing business, and that we would do it, which I found afterwards was not the facts at all; and, even when we came to make a little assessment, you couldn't get the company to put up a dollar for an assessment. I wanted to assess the various stockholders, and get a fund to manufacture some of these very bells. I wanted them to put in money to manufacture the bells. I have found out since that they weren't the best. I wanted to make an assessment

as late as December, 1897, nearly two years after I bought in there. I think, if the thing had been pushed, there might have been some money pulled out. I'll be candid about that. But when you get into a stock company, and they all lay down on you, and won't even pay an assessment, you may as well give it away. When they sold all they could, then they wanted to give it away. It might have been a success if it had been pushed. We might have been able to sell some of it, even if it wasn't the best in the world."

If any false representations were made, he very soon found them out. But he made no protest or objection to the renewal of the note or payment of interest and part of the principal upon that ground. This course of conduct was continued for more than two years. He set up no such defense until suit was brought and his amended plea filed. There was no total failure of consideration. The patents were of value, and several disinterested railroad men testified that the signals worked well. It was his own opinion that, if the business had been properly pushed and managed, it would have been a success, but the stockholders became discouraged and would not pay assessments. The whole property was then sold out by vote of the directors, of whom defendant was one, and the proceeds divided among the stockholders, of which he received his share. The facts were undisputed, and the question of waiver, therefore, became a question of law for the court to determine. There was no agreement between the plaintiff and defendant to sue Hurst alone until just before this suit was brought, about three years after the purchase.

Some stress seems to be laid upon the testimony of the defendant that when he indorsed the renewal notes he did not agree with the plaintiff to pay them, or any part of them. This means only that nothing was said about payment. There was no occasion to say anything. His contract was one to pay. The important fact is that he treated his obligation as a binding one, and made no claim that either the original or any of the renewals were

not valid, or that he had any defense to them.   I think
the case is ruled by *Western Electric Co.* v. *Hart*, 103
Mich. 477 (61 N. W. 867), and cases there cited.

MONTGOMERY, C. J., and LONG, J., concurred with
GRANT, J.