### In re TEAR-OFF BOTTLE SEAL CO.

### In re MONTGOMERY.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

No. 229.

1. PATENTS ☞209—LICENSE—FRAUDULENT REPRESENTATIONS—MATTERS OF OPINION.

Statements made by persons interested in certain patents and in a prospectus subsequently issued by them to induce the formation of a company to exploit the patents under licenses *held* not to constitute such fraudulent representations as to invalidate the license contract subsequently made by the corporation, but to consist mainly of predictions and opinions.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 300, 303; Dec. Dig. ☞209.]

2. PATENTS ☞209—LICENSE—RESCISSION—TIME FOR RESCISSION.

A licensee under patents, which proceeded for four years to manufacture under the license and in perfecting its machinery therefor, cannot then rescind the license contract on the ground that it was induced by fraud, nor can it, after affirmance by such continued use, recover damages resulting from the alleged fraudulent representations.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 300, 303; Dec. Dig. ☞209.]

Appeal from the District Court of the United States for the Southern District of New York.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Saul S. Meyers, of New York City (Selden Bacon, of New York City, of counsel), for appellant.

Lind & Pfeiffer, of New York City (Alfred D. Lind and Alexander Pfeiffer, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. One Kaufman was the inventor of a bottle seal made of aluminum, and patentee therefor under letters patent of the United States, followed by patents in about 15 foreign countries. He assigned one undivided half of these patents to B. L. and Berthold Weil. Messrs. Stark and Turner were the inventors of the capping machine for applying the seals or caps to bottles, and owners of patents therefor in this and various foreign countries. All these patents were ultimately assigned to the Bottlers' Seal Company, of which the brothers Weil were the chief officers and holders of its entire capital stock.

December 23, 1909, the Bottlers' Seal Company executed an exclusive license under all the foregoing patents to the 4th day of January, 1924, to one Horner, and sold to him all its machines for making and applying the seals for the sum of $25,000. December 28, 1909, Horner assigned the license and sold the machines to the Tear-Off Bottle Seal Company. September 11, 1913, the Bottlers' Seal Company filed its proof of debt in bankruptcy proceedings against the Tear-Off Bottle Seal Company for unpaid royalties under the said license agreement of $45,000, with interest.

November 20, 1913, the trustee filed objections on the ground that the bankrupt had been induced to enter into the agreement by fraudulent representations and had rescinded the same, and the proof of debt was referred to a special master for re-examination. The claimant took no testimony. The record shows that the Weils and some of the persons who subsequently organized the Tear-Off Bottle Seal Company prepared a prospectus, drafted principally on the strength of statements of the Weils, to be issued to the public to secure capital for the corporation to be organized under the name of Tear-Off Bottle Seal Company to exploit the patents under the license. This prospectus was shown to other persons, who joined the company, and it is some statements made by the Weils before that time, together with those contained in the prospectus, said to be false and fraudulent, which induced the bankrupt to enter into the license agreement. The special master so found, and entered an order disallowing the proof of debt, which order, upon petition to revise, was reversed by Judge Mayer, and the claim allowed, without costs. From this judgment the trustee appeals.

[1] The principal statements of the Weils, made before the prospectus was issued, which are complained of, were that the patents were basic and that aluminum could be had for 25 cents per pound. This word "basic" is vague, and may mean either that the United States patents were the basis of the foreign patents or that they were pioneer patents. At all events, it is a matter of opinion whether a patent is basic, and so what the price of aluminum would be in the future was a pure matter of opinion. In addition there was testimony

of one of the Bottlers' Seal Company's employés that Stark, its fore-
man, told him, when running the assembling machine in the presence
of persons invited to see it, not to stop, even though he knew imperfect
caps were being made. The testimony is not entirely satisfactory, but
there is nothing to show that it was within Stark's authority to give
such an instruction. There is no proof whatever that either of the
Weil Bros. did such a thing, or ordered such a thing to be done. Ex-
amination of the prospectus shows that it was, as might be expected,
almost entirely a matter of prediction and of opinion. The Bottlers'
Seal Company had no commercial plant, but only an experimental one,
in which it did stamp out by a standard machine metal which was as-
sembled by a specially devised, but unpatented, machine into the pat-
ented seal, and then capped on the bottles by another machine cov-
ered by the patent to Stark and Turner. A great many caps had been
made and bottles capped, some of which had been used by the Ebling
Brewing Company, which expressed its high appreciation of the same
in a letter in evidence. All persons interested were given free access
to the plant. Every one knew that the new company was to be organ-
ized to build machines which would make and apply the patented seal
commercially, and the object of the prospectus was to forecast what
such machines, when made, would do, and the probable profits of the
operation so as to interest investors.

After the bankrupt began to use the assembling machine, some time
in the spring or early summer of 1910, it was found to be very unsatis-
factory. It also found the price of aluminum to be so high as to make
profits impossible. Still, it was so convinced of the value of the license
that it spent $100,000 in money and nearly four years in time in devis-
ing a better assembling machine, capable of manufacturing commer-
cially tin, instead of aluminum, caps. Just as this machine was about
completed, the company went into bankruptcy. Down to that time,
however, it had received and invited subscriptions to its capital stock,
showing exactly the same kind of confidence in the bottle seal that it
was quite natural the Weil Bros. had at the time the prospectus was
prepared. We think the District Judge was right in finding that the
bankrupt was not induced to make the license agreement by fraudu-
lent representations.

[2] Were this otherwise, the result would be the same. The bank-
rupt could not go on availing itself of the benefit of the license for nearly
four years after it had discovered the fraud and then rescind. It was
bound upon discovery to stop, if it wished to rescind. By going on it
plainly affirmed the contract. Nor, having affirmed it, could the bank-
rupt recover, either by direct suit or by set-off or counterclaim, any
damages resulting to it from such representations, even if they were
false. That would be to let it at the same time affirm and disaffirm
the contract. Kingman v. Stoddard, 85 Fed. 740, 29 C. C. A. 413;
Simon v. Goodyear Co., 105 Fed. 573, 44 C. C. A. 612, 52 L. R. A. 745.
The bankrupt, of course, could avail itself of any breach of the li-
cense agreement, but none is shown.

Strictly speaking, the trustee's objection to the proof of debt should
have been overruled, because, as both the special master and the Dis-

trict Judge found, the bankrupt never rescinded the contract. As, however, the claimant took a large amount of testimony upon the subject of fraudulent representations, which was considered by both the special master and the District Judge, the objection may be regarded as amended to conform to the proof, and include the trustee's claim for damages against the Bottlers' Seal Company by way of set-off or counterclaim.

The judgment is affirmed, with costs of this court.