[No. 3695.]

THE AMERICAN NATIONAL BANK OF DENVER v. HAMMOND.

1. CORPORATIONS—FALSE REPRESENTATIONS—ULTRA VIRES.

Agents of a corporation can only bind the corporation within the scope of the powers for which it was created, but where the corporation reaps and retains the fruits of an unauthorized act, it cannot interpose the defense of *ultra vires*. It is no part of the business of a national bank to make representations regarding the financial standing of persons, but where such representations were made for the purpose of subsequently acquiring property for its own benefit, and it did acquire and retain the benefit of such property, it cannot escape liability on the ground that the transaction was not within the scope of its corporate powers.

2. FALSE REPRESENTATIONS—RELIANCE ON STATEMENT.

Where there is nothing in a representation of facts calculated to arouse suspicion of its truth a party is justified in relying on its truthfulness.

3. FALSE REPRESENTATIONS—FACTS—OPINIONS.

False representations in order to be actionable must relate to matters of fact as distinguished from opinions, and must be statements susceptible of knowledge. An actionable false representation cannot itself be the mere expression of an opinion entertained by the party making it, but where a statement that might otherwise be only an

opinion, is affirmed as a fact, material to the transaction to which it relates, so that the person to whom it is made may treat it as a fact and act on it accordingly, such statement becomes an affirmation of fact within the rule. If representations are of such character that they will bear the construction either of opinion or statement of fact, the question as to which they were, must be decided by the jury.

4. SAME.

Where a party being about to sell a stock of goods on credit went to a bank and stated to the officers that he had been referred to the bank by the parties with whom he was trading, for information as to their financial standing, and as to the value of certain mining stock proposed as collateral security, to which the reply with reference to the persons was, that they were all right in a business way, and that the bank's dealings with them had been satisfactory, the statement was not a representation regarding the solvency of the persons that would sustain an action and it was error to submit it to the jury.

5. SAME.

A party cannot base an action for damages upon representations of solvency, unless he relied upon such representations in giving credit, even though such statements were false.

6. SAME.

Where a party about to sell a stock of goods on credit, being referred by the buyers to a bank as to their solvency, and as to the value of certain mining stock proposed to be given as collateral security, stated to the officers of the bank that he came to make inquiries about this stock, that he knew they held some of the same security, and that he wanted information that he could rely upon, that the purchasers were strangers to him, and he did not propose to let his store go unless satisfied the security was all right; to which the bank officer replied that it would be all right, that the number of shares he proposed to take ought to be ample security for the amount it was intended to secure, *held*, that the value of mining stock was a subject upon which an opinion could be expressed, or a statement made as a matter of fact, and in an action against the bank for false representations, it was proper to submit the question to the jury to determine whether the statement was one of opinion or fact.

7. SAME—MEASURE OF DAMAGE.

In an action for damage for false representations, which induced the plaintiff to sell a stock of goods on a credit, the measure of damage was the value of the goods at time of sale, less any payment that may have been made and the value of collateral security taken.

*Appeal from the District Court of Arapahoe County.*

APPELLEE, as plaintiff below, seeks to recover from appellant the balance due upon the purchase price of the contents of a drug store, sold by him to Edward and Frank Crowl, and bases his right upon the following facts, claimed by him to have been established at the trial:

That at the time negotiations for the sale were pending, the latter referred him to appellant for information regarding their financial responsibility, and the value of mining stock which they proposed to pledge as collateral for the payment of the balance of the purchase price; that at this time the Crowls were indebted to appellant, which indebtedness was secured by mining stock of the same company which they proposed to pledge appellee; and that an agreement existed between them and the bank, that they should refer the appellee to it for the above information, and that it should recommend them to him as solvent persons, and the mining stock good security for the amount for which he expected to extend them credit in the transaction; so that the Crowls might be enabled to purchase from him, who, in turn, were to pledge the proprety thus obtained as security for the indebtedness due from them to appellant; that he applied to the bank for this information, and that, pursuant to this agreement, appellant represented to him that the Crowls were solvent, and the mining stock valuable and good security for the amount for which he expected to accept it as collateral, which representations were false, and known by appellant so to be, and made for the purpose of inducing him to sell to the Crowls, in order that it might be benefited in the manner above indicated; that, relying upon the truth of these statements, he consummated the deal with the Crowls, and received from them the mining stock in question, as security for the unpaid balance of the purchase price; that on the consummation of the deal between himself and the Crowls, the latter pledged to appellant the property purchased, and that it has taken possession of, and sold it; that the Crowls are insolvent, and the mining stock of no value, and that he is unable to collect from them the unpaid balance for the property so sold.

.At the trial appellant offered to prove that the property purchased was not worth the sum for which appellee had sold it, which offer was refused; and, *inter alia*, the court instructed the jury that the measure of damages, in case they found for the appellee, would be the amount for which he gave credit to the Crowls upon the sale, with interest.    There was a verdict and judgment for appellee.    Such further reference to the record and evidence as may be necessary for an understanding of the questions decided, will be found in the opinion.

Mr. T. J. O'DONNELL, Mr. W. S. DECKER and Mr. MILTON SMITH, for appellant.

Messrs. CRANSTON, PITKIN & MOORE and Mr. T. E. WATERS, for appellee.

MR. JUSTICE GABBERT delivered the opinion of the court.

Of the numerous errors assigned by appellant, it is only necessary to pass upon those included in the following propositions, suggested by its counsel:

*First.* That it was no part of the business of the bank to make representations regarding the financial condition of the Crowls, or the value of the mining stock, and, therefore, it is not liable for the statements of its officers in this respect; that the evidence does not establish the allegations of the complaint; that appellee was not justified in relying upon the statements of the bank officials respecting the Crowls and their mining stock; and that the statements attributed to these officials were but mere expressions of opinion or belief, and, therefore, not actionable.

*Second.* That the court erred in its instructions regarding the measure of damages, and in refusing to permit appellant to introduce evidence touching the value of the stock of merchandise.

1.. A corporation must act through its agents, who can only

bind it within the scope of the powers for which it was created: Cooley on Torts (2d ed.), 136; *Weckler v. Bank,* 42 Md. 581; but where, through its agents, assuming to act in its behalf, it reaps and retains the fruits of an unauthorized transaction, this doctrine is no longer applicable; for it cannot interpose the defense of *ultra vires* and still retain the benefits thus acquired. *American National Bank v. National Wall Paper Co.,* 77 Fed. Rep. 85; Thompson on Corporations, §§ 6015, 6016. It was no part of the business of appellant to make representations or statements regarding the financial responsibility of the Crowls, or the value of the mining stock, and for such representations alone it could not be held liable; but coupled with the agreement said to have existed between it and the Crowls, and the alleged object of the bank in aiding them to secure the property of appellee, in connection with its acts in subsequently acquiring this property for its own benefit, it cannot escape liability upon the ground that the transaction was not within the scope of its corporate powers; and if the facts upon which appellee relies were established, he was clearly entitled to recover the damages sustained by reason of the acts of appellant.

Relative to the proposition, that the evidence does not establish the facts upon which appellee relies for a recovery, it is not necessary to notice the testimony, except in so far as its sufficiency or materiality bears upon the issues. If sufficient in this respect, it was the province of the jury to determine the facts, and if the testimony supports the issues tendered by the complaint, the verdict and judgment cannot be disturbed upon this ground, so that a disposition of this question depends upon the views expressed on the remaining ones, included in the first proposition advanced by counsel for appellant.

It appears that the representations attributed to the bank officials related to matters regarding which, from the nature of the previous transactions between the Crowls and the bank, they would be presumed to have knowledge. There was nothing in the transaction, nor does appellee appear to have

possessed any information, which would have aroused his suspicions, or cast doubt upon the truth of the statements claimed to have been made by the bank officers, and he was, therefore, justified in relying upon them, in so far as the law recognizes them of that character that their falsity may be actionable. 2 Pomeroy's Equity (2d ed.), §§ 891, 892.

The general rule is, that a representation cannot form the basis of an action for falsity unless it relates to a matter of fact, as distinguished from opinion. The difficulty arises in making the distinction. The true rule appears to be, that a fraudulent misrepresentation cannot itself be the mere expression of an opinion entertained by the party making it, but where such party makes a statement which might otherwise be only an opinion, and does not state it as the mere expression of his opinion, but affirms it as a fact, material to the transaction to which it relates, so that the person to whom it is addressed may reasonably treat it as a fact, and rely and act upon it accordingly, then such statement becomes an affirmation of a fact, within the meaning of the general rule, and may be a fraudulent misrepresentation. 2 Pomeroy's Equity (2d ed.), § 878. If the representations are of such character that they will bear either the construction that they were expressions of opinion, or statements of fact, the question, which they were, must be decided by the jury. 3 Sutherland on Damages (2d ed.), § 1167; *Teague v. Irwin*, 127 Mass. 217; *Sterne v. Shaw*, 124 Mass. 59. But in order to justify a finding that they were representations of fact, they must be statements susceptible of knowledge as distinguished from opinion. 3 Sutherland, *supra; Sterne v. Shaw, supra; Nounnan v. Sutter Land Co.*, 81 Cal. 1; *Williams v. McFadden*, 23 Fla. 147; *Parker v. Moulton*, 114 Mass. 99.

Precisely what conversation occurred between the bank officials and appellee regarding the Crowls, as detailed by appellee himself, is not altogether clear. He says when he went to the bank that he wanted to know if the Crowls were reliable men, *i. e.*, trustworthy. It nowhere appears that he asked any questions of these officers regarding the solvency

or responsibility of these parties, viz: their ability to pay debts, or means of paying obligations they might incur. He also states that he told one of these officers that he came to inquire about the value of the mining stock, and the response, so far as it related to the Crowls, was to the effect that they were all right in a business way, and that their transactions with the bank were satisfactory; that to the other official his inquiries, in substance, were that he had been referred by the Crowls to the bank for information as to their financial standing and the value of the stock, to which the reply with reference to the Crowls was, that they were all right, or that he would find them all right; and that the bank's business dealings with them had been satisfactory. From his own statements it is apparent that the information he sought related to the mining stock particularly, for he says after this last conversation he thanked the party with whom it was had, for the information received, and stated to him, with reference to the mining stock, that it was information he could rely upon, knowing the bank held some of the same security; and later, in his testimony, stated that he did not deem it necessary to make any inquiry of the Crowls about what property they owned, because he thought the mining stock was sufficient after the information regarding it was obtained from the bank. According to the testimony of appellee, it is evident that no statements regarding the solvency of the Crowls were made to him by the bank officers; his inquiries on this subject were so vague and indefinite that it is impossible to ascertain what information he was seeking in this respect; and it was, therefore, error to submit this question to the jury, for they may have been led thereby to believe there was testimony tending to prove the contention of appellee, that he had been falsely informed by the bank officers regarding the solvency of the Crowls. *Burlington & C. R. R. Co. v. Liehe*, 17 Colo. 280; *Burlock v. Cross*, 16 Colo. 162. Further, if he did not rely upon any information received from the bank officers regarding the solvency of the Crowls, he cannot make their representations in this respect the

basis of an action for damages, even though such statements may not have been true.  2 Pomeroy's Equity (2d ed.), § 890.

With reference to what was said by appellee and the bank officials, with whom he talked regarding the mining stock, the testimony is conflicting, but taking the version of appellee, it was to the effect that he told this officer that he came there to make inquiries about this stock and the company; that he knew the bank held some of the same security, and that he wanted information that he could rely upon; that the Crowls were strangers to him, and that he did not propose to let his store go unless satisfied regarding the security; that he was told by this officer that it would be all right, and that the number of shares he proposed to take ought to be ample security for the amount which it was intended to secure; that he then thanked him for the information, and said that he could and would rely upon it.  The value of the mining stock was a subject upon which an opinion could be expressed, or a statement made as a matter of fact.  In the light of all the circumstances surrounding the transaction, it cannot be said, as a matter of law, that the statements of the bank officer regarding the stock, as detailed by appellee, were mere expressions of opinion or belief, and not statements of fact, or *vice versa*, and this question should have been submitted to the jury, under appropriate instructions, to determine which they were, from all the evidence in the case.

2. Damages are limited to the natural and proximate consequences of the acts complained of, 2 Greenleaf, § 256, and those results are proximate which the party charged with such acts must have contemplated as the probable consequences arising therefrom.  *Crater v. Binninger*, 33 N. J. L. 513.  If the facts are established which render the appellant liable, it can only be called upon to respond in such sum as equals the damages which appellee has sustained resulting from the acts charged.  By the acts of its officers, if established, as contended by appellee, appellant has obtained his property, the natural and proximate results which they must

have contemplated as the probable consequences of their acts in the premises; and the bank is, therefore, only responsible to him, if liable at all, for the value of this property at the time of its transfer, less whatever sum could be treated as a payment by the Crowls to him, and the value of the mining stock taken as a security. Appellee would, also, be entitled to damages in a sum equal to legal interest on such balance. *O. & G. S. & R. Co. v. Tabor,* 13 Colo. 41.

The judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*