No. 8574.

EMERSON-BRANTINGHAM IMPLEMENT COMPANY v. WOOD.

1. ESTOPPEL—*By Conduct.* One who having purchased machinery under a written contract purporting to set forth all representations of the vendor, accepts the machinery, and after a test thereof completes the purchase, making a payment on account, executing notes for deferred installments, and a receipt for the machinery declaring that the written agreement of purchase "contains all the agreements between us", will not be heard to assail the purchase upon the allegation of falsity of representations not made or referred to in the writing of sale.

2. APPEAL AND ERROR—*Judgment.* Equitable action to rescind a contract for fraud. Order for money judgment for plaintiff; no decree for rescission. Notwithstanding the imperfections of record, the court, to avoid further litigation determined the cause upon the issues raised by the pleadings.

*Error to Denver District Court, Hon. John H. Denison, Judge.*

Mr. FRANK L. GRANT, for plaintiff in error.

Mr. W. G. TEMPLE and Mr. E. M. SABIN, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THE plaintiff in error sold to the defendant in error, under a written contract, a Big Four gas traction engine for the sum of $3,100, with freight to be added from Minneapolis, Minnesota, to Briggsdale, Colorado; $500.00 was to be paid in cash and the remainder in three promissory notes; one for $200.00 due June 15th, 1913; one for $1,200 due November 1st, 1913, and one for $1,200 due November 1st, 1914.

This action is by the defendant in error for a rescission

of the contract.  The agreement was dated March 29th, 1913, and in so far as it seems necessary to consider, recites:

"That as soon as reasonably possible after notice from the purchaser (N. A. Wood) of the arrival of said engine at said station (Briggsdale, Colo.) to send an operator at its own expense to start said engine and instruct the purchaser in its proper operation, and direct and supervise the trial hereinafter provided for.

The purchaser further agrees that he will purchase said engine for the price and settle for it upon the terms hereinafter set forth; if after three days' trial of the engine under the direction and supervision of said operator in such field work as the purchaser may elect (and he agrees immediately upon arrival of the engine to furnish the place and designate the kind of work for such trial, whether conditions being favorable) it shall be demonstrated that the engine will and does fulfill the following conditions:

(a)  That the engine will develop its rated horsepower at the drawbar.

(b)  That the engine, if rated at 30 or more horsepower, will furnish ample and steady power to drive any 40-inch cylinder threshing machine, complete with self-feeder, weigher and blower.  *  *  *  If said engine, fixtures and equipment are not so purchased, the purchaser agrees within two days after the expiration of such three days' trial to return same to said railway station, and said purchaser further agrees that his failure to so return said engine, fixtures and equipment within two days after said three days' trial shall be proof conclusive that said engine and equipment fulfilled the warranty in every respect and shall constitute an acceptance and purchase of said engine, fixtures and equipment by the undersigned at the price and upon the terms and conditions hereinbefore stated.

Sixth.  It is mutually agreed that said engine, fixtures and equipment are purchased upon the following warranty only, viz:

(a)  Should any parts (except electrical parts) prove

defective within one year from the date of purchase of said engine, on account of inferior material or workmanship, and such parts be returned to the Big Four Tractor Works, Minneapolis, Minn., transportation prepaid thereon, and be found by the Company to be defective on account of inferior material or workmanship, said company will furnish new parts in lieu of such defective parts on board cars, Big Four Tractor Works, Minneapolis, Minn.

Seventh.   It is expressly agreed that settlement for or the retention of said engine beyond the time specified in clause fifth thereof, shall be a waiver of all other representations, warranties, terms or contentions upon which said engine is ordered or purchased, except those in clause sixth hereof.

Eighth.   It is further agreed that this order and agreement is given and accepted and the sale and purchase of said engine, fixtures and equipment are made upon the express condition that this order and agreement contains all the terms and conditions of the sale and purchase of said engine, fixtures and equipment, and cannot in any manner be changed, altered or modified without the written consent of the officers of said company, and that the sending of any person by the company to repair or operate said engine or the remaining of the person sent to start said engine, after the expiration of said three days' trial, shall in no manner waive, modify or annul any of the terms or conditions hereof."

At the foot of the agreement appears the following, signed by the plaintiff.

"I acknowledge that I fully understand all the terms and conditions of the above agreement, and that I have this day received a copy of the same."

The specific allegations of fraud upon which the purchaser relies are:

(3)   "That the defendant, with intent to deceive and defraud the plaintiff, and to induce him to purchase such engine, falsely and fraudulently represented to the plaintiff at and prior to the time of said sale, that the said en-

gine would develop full thirty (30) horsepower, and would burn kerosene, distillate and other low grade fuel of that character successfully and with much greater economy than any of the so-called 'kerosene engines'; and that the plaintiff relied upon said representations and was thereby induced to purchase and pay for said engine as aforesaid.

(4)   That in truth, and as the defendant then well knew, the said representations made by the defendant to the plaintiff regarding said engine as aforesaid, were false and untrue, and that the said engine did not and could not be made to develop a capacity of thirty (30) horsepower, and will not successfully burn kerosene, distillate or other low grade fuel of that character and cannot be successfully operated with such fuel, and can only be operated with gasoline or naphtha, the cost of which fuel prohibits the use of said engine, makes the same impracticable for farming purposes and renders the said engine absolutely worthless to this plaintiff."

Verdict was rendered in favor of the plaintiff below in the following words: "We, the jury, find the issues herein joined for the plaintiff, and assess his damages at the sum of $989.23." The record does not recite the formal decree if such was entered, but we are advised only that it was "ordered that judgment be entered in favor of the plaintiff and against the defendant in accordance with the verdict herein." We are not advised by the record as to whether the court ordered the contract to be rescinded, the notes to be cancelled, or that any equitable relief was otherwise granted.

Just how the court could have rendered the money judgment for damages, without a finding as to fraud, and the prerequisite order for rescission of the contract, is not suggested by counsel for either party, but in order to avoid further litigation we will determine the matter on the issues raised by the pleadings.

It will be observed that the only allegation upon which the plaintiff relied was that the defendant represented at a time preceding the signing of the contract, that the en-

gine would burn kerosene, distillate and other low grade fuel of that character successfully and with greater economy than any of the so-called kerosene engines, and that in fact it cannot be successfully operated with such oils and can only be operated with gasoline or naphtha, the cost of which is impracticable and prohibitive for farming purposes. There is no other complaint either in the pleadings or testimony. Nothing is said in the agreement as to the character of fuel the engine will burn. The agreement describes the machine as a Gas Traction engine, not an engine to be operated by the use of oil.

The plaintiff testifies that the representation made to him was by the agent of the company prior to the agreement. The record discloses that the plaintiff is a physician and a man of business. There is no contention but that he did not read and sign the agreement knowingly, and without the slightest misunderstanding as to its contents, including his own statement therein that he fully understood its terms and conditions. Yet his only contention is for a condition which he well knew was not contained in the agreement when he signed it. He does not pretend to attack either by pleading or proof the good faith of the company in any other respect.

The machine was delivered at his premises, on its own power from the railroad station, some eight miles distant. It was subjected to the test provided in the agreement. The plaintiff employed for such purpose, his brother, who was an experienced engineer and machine man, and who made the test in conjunction with the company's expert. It was after this test that he made the cash payment and signed the notes and at which time he executed the following receipt:

"Receipt for Machinery Delivered. Dated at Denver, Colo., 4-23-1913.

Received of Emerson-Brantingham Implement Company (an incorporated company), of Rockford, Illinois, the following described machinery:

One Big Four '30' tractor, No. 1347, under and pur-

suant to the conditions of a written order signed by N. A. Wood, dated on the 29th day of March, 1913, which order contains a written warranty from said company on said machinery a copy thereof being received by us. It is expressly understood and agreed that the above described machinery is received by the undersigned under and pursuant to the terms and conditions of the said written warranty and not otherwise (any changes in the machinery ordered or terms of payment notwithstanding), and that said written order and warranty contains all the agreements between us on account of said purchase; that the notes given by the undersigned to the company for said goods and the mortgage securing said notes were examined and read before they were executed, and the same are delivered in fulfillment of said written agreement.

(Signed)    N. A. WOOD."

The test began on or about April 15th. The plaintiff had shipped distillate to the farm, and it was tried and did not work successfully. Indeed, distillate was used for a part of the distance from the station to the farm, and did not prove satisfactory, all this with the knowledge of plaintiff, and before he made his payments and signed the receipt in which it was reiterated that the written agreements and warranty contains all the agreements between the parties.

It is plain that the plaintiff had full opportunity to learn from his own observation and examination as to the truth or falsity of the alleged misrepresentations, before he paid for and gave his receipt for the machine. The law in such case is well settled and no longer admits of argument:

"If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient

opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled." Pomeroy's Equity Jurisprudence, § 893.

Courts may not destroy the stability and certainty of written contracts upon such a frivolous showing as is here presented. It was said by this court in *St. Vrain Co. v. Denver U. P. Ry Co.*, 18 Colo. 211, 32 Pac. 827:

"By the oral evidence proposed, it is attempted to show that the canon location was certainly and definitely agreed upon, to the exclusion of the route outside of the canon. This is in direct contradiction of the terms of the written agreement. If such proof is admissible under the claim of fraud, then an oral agreement would be admissible to vary and contradict the terms of a written contract. This cannot be permitted. The rule contended for would, if adopted, introduce an element of uncertainty into written contracts that could only be productive of strife between the parties. After a written contract has been executed, oral negotiations leading up to such a contract cannot be shown for the purpose of changing or contradicting its terms."

There are other errors presented which would seem to justify a reversal of the judgment, but are not considered, in view of what has been said.

Judgment reversed.

White, C. J., and Garrigues, J., concur.

Decided March 5, A. D. 1917. Rehearing denied June 4, A. D. 1917.