No. 12,611.

TROUTMAN *v.* STILES.

(290 Pac. 281)

Decided June 30, 1930.

Mr. JOHN P. BECK, Mr. T. E. MUNSON, for plaintiff in error.

Messrs. COEN & SAUTER, Mr. BEN L. GARMAN, for defendant in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE object of this action by Troutman against Stiles is to recover the sum of $9,600 from the latter as damages

which resulted to the plaintiff, as he says, by reason of certain false and fraudulent representations by the defendant as to the character and value of 320 acres of farm lands in Phillips county, Colorado, which Stiles owned and which he exchanged for a stock of merchandise of plaintiff Troutman in New Palisade, Nebraska. The trial court sustained the defendant's motion for an order on the plaintiff to make his complaint more specific by setting forth, inter alia, whether or not the exchange contract was in writing, and, if it was, that such written contract be pleaded in detail. Plaintiff complied with the court's order so directing, and in his amended complaint set forth in haec verba the written contract of exchange, to which the defendant's demurrer for insufficient facts was sustained, and, as the plaintiff elected to stand by his amended complaint, the action was dismissed, and plaintiff is here with his writ of error.

We think the judgment must be upheld. The amended complaint alleges that at the time plaintiff entered into this exchange contract he was unacquainted and unfamiliar with the market value of Colorado lands and particularly lands near Holyoke, Colorado. The complaint further says that the defendant, with intent to cheat and defraud the plaintiff and to induce the latter to entei into the written contract of exchange, represented tc plaintiff that the same was good alfalfa land and suitable for the successful cultivation of all other agricultural crops, and that it was of the reasonable market value of $50 per acre; whereas, in truth and in fact, the land was not good alfalfa land and its reasonable market value did not exceed $25 per acre. Plaintiff further alleges that he relied upon the defendant's statements as aforesaid, not having any opportunity to learn that the statements were untrue until after the contract was signed by him and the land thereafter actually conveyed. And as further evidence of fraudulent conduct on the part of the defendant, the plaintiff alleges that the defendant caused his nephew and another man, before the contract was executed, to

represent to the plaintiff that they were well acquainted with its value, which they said was at least $50 per acre. While negotiations were pending for the exchange, the defendant caused certain friends of his own selection to take the plaintiff to this land and show it to him; that the plaintiff and the defendant's representatives went upon the land in question to inspect the same and plaintiff was shown a portion of the land which was good level land and it was represented to the plaintiff that the entire section in which this tract was situate was of the same kind and character, when in truth and in fact there were three large lagoons on the land covering approximately 30 acres, which lagoons were situate on the opposite side of the tract from where the plaintiff was taken to examine it, and that plaintiff made no further examination and relied upon such statements as to its character as were made to him by these representatives of the defendant. Such other allegations as are usual in suits of this character to bring the case within the requirements of the law are set forth in the complaint. Some time thereafter the written contract for the exchange was entered into by the parties. It contains the following sentence: ''We each have inspected each other's property and are dealing solely on our own judgment and not upon any representations that have been made to us, and have carefully read this contract before signing.''

It was upon the language above quoted that the trial court relied in sustaining the defendant's demurrer to the amended complaint. Counsel for the plaintiff on this review say that the trial court's decision was based largely upon *Emerson-Brantingham Co. v. Wood,* 63 Colo. 130, 165 Pac. 263, cited with approval in *International Harvester Co. v. Rieke,* 9 Fed. (2d) 776, 781. If so, the trial court acted wisely, for that decision is clearly authority for this judgment here complained of. The Emerson-Brantingham action was equitable in its nature, and was to rescind, on the ground of fraud in its procurement, a contract of sale of machinery. It seems that the

trial court submitted the question of fraud as well as damages to the jury, which found for the plaintiff, and judgment went accordingly. In the opinion by Mr. Justice Scott upon review, he stated that just how the court could have rendered the money judgment for damages, without a finding as to fraud, and the prerequisite order for rescission of the contract, is not suggested by counsel for either party. The court, however, speaking by Mr. Justice Scott, said that, in order to avoid future litigation, the matter on the issues raised by the pleadings would be determined on review. The opinion further states that the only allegation upon which the plaintiff there relied was that the defendant represented, at a time preceding the signing of the contract, that the traction engine would burn kerosene, distillate and other low grades of fuel successfully and with greater economy than any of the so-called kerosene engines. The plaintiff, purchaser of the engine, signed a written agreement of sale, and the court said that his only contention on the trial is based upon a condition which he knew was not contained in the agreement when he signed it. In that case plaintiff had full opportunity to learn from his own observation and examination as to the truth or the falsity of the alleged representations before he paid for and gave his receipt for the engine. Upon the facts there, the court cited with approval Pomeroy's Equity Jurisprudence, section 893, as follows: "If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an inves-

tigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled." The opinion also quotes *St. Vrain Co. v. Denver, U. & P. Ry. Co.*, 18 Colo. 211, 32 Pac. 827, the following: "After a written contract has been executed, oral negotiations leading up to such a contract cannot be shown for the purpose of changing or contradicting its terms."

█ This record shows that after the alleged oral representations of the defendant and his representatives were made to the plaintiff as to the value and character of the lands, the plaintiff himself went upon this land and made an investigation of his own. He saw a portion of the tract of land in question which seemed to him at the time to be good agricultural lands. He thus had an opportunity to inspect this entire tract, if he saw fit to do so, and if he neglected, as he did, this opportunity to go over the entire tract, it was his own fault that he did not ascertain the condition of the land in question and determine for himself its character and value. The written contract was not signed by the plaintiff for six or seven days after he inspected this land and had an opportunity to judge of its character. In 26 C. J., pp. 1149, 1150, §68, it is said: "Where the parties deal upon equal terms, one who has failed to avail himself of means of knowledge readily within his reach cannot as a rule complain of the other party's representations." Plaintiff certainly had an opportunity to inspect and for himself determine the character of this entire tract of land, but he neglected, according to his own admission, to go over the entire tract with that object in view. The plaintiff took this property in exchange with his eyes open and without necessarily relying on the statement of the defendant as to its value or character. *Fraser v. Walker*, 65 Colo. 126, 128, 73 Pac. 1088. There was nothing done

to prevent him from making a full investigation of this property. The means of knowledge were readily at hand and available to him. If a purchaser of land does not avail himself of the means and opportunities which are afforded him for acquainting himself with the character and value of the land, he will not be heard to say that he has been deceived by vendor's representations. *Farnsworth v. Duffner*, 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931.

We quote from Mr. Justice Scott's opinion in the Emerson-Brantingham case, supra, p. 135, the following, which we think applicable to the case now before us: "It is plain that the plaintiff had full opportunity to learn from his own observation and examination as to the truth or falsity of the alleged misrepresentations, before he paid for and gave his receipt for the machine. The law in such case is well settled and no longer admits of argument."

In *Pestal v. O'Donnell*, 81 Colo. 202 (254 Pac. 764), this court, at the bottom of page 212 and top of page 213 of the opinion, said: "It is true that a purchaser of real estate cannot be charged with negligence, and is not required to make a personal examination, where the property which he has purchased is remote from the place of the contract or the place of his residence, and where he would be required, at considerable expense, to make the examination, or where by reason of concealment or other circumstances, it would be impossible or difficult to make the inspection. But the rule is otherwise where the party claiming to be defrauded can by proper diligence ascertain the truth or falsity of the representations. *Sellar v. Clelland*, 2 Colo. 532, 544."

The latter part of this statement is peculiarly pertinent here. The plaintiff evidently did not choose to rely upon the alleged false representations of the defendant as to the character and value of this tract of land, which was the subject of negotiations between them in the exchange of properties. He did not choose to remain

in Nebraska and take the word of the defendant, but came to Colorado and actually was taken to the land in question, where he had full opportunity to examine it as fully as he desired. He seemed to be satisfied with the result of his own investigation and examination and there is nothing in the record which shows that he was prevented by the defendant or the defendant's agents from making a thorough investigation for himself. It necessarily follows that the judgment should be, and it is, affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE ALTER concur.