## No. 13,152.

### BOSICK v. YOUNGBLOOD.
(37 P. [2d] 1095)

Decided June 12, 1934. Rehearing denied November 26, 1934.

Mr. RALPH L. CARR, Mr. JEAN S. BREITENSTEIN, for plaintiff in error.

Mr. CARL CLINE, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was defendant in the trial court where an action to recover damages for fraud was filed against him by the defendant in error April 23, 1930, in which a judgment for $8,500 and body execution was entered against him on a jury verdict. To reverse that judgment this writ is prosecuted. The parties will be referred to as plaintiff and defendant, as they appeared at the trial.

Plaintiff was the owner of two small apartment houses in Denver, and engaged one Higbee, a real estate operator, to find country property for which the apartment houses could be traded. Higbee advertised plaintiff's property for trade. Bosick, the defendant, was the owner of 18 acres of improved land in Jefferson county. He responded to the advertisement, called at Higbee's office and listed his land for a trade. On the next visit to Higbee's office arrangements were made for the meeting of plaintiff and defendant. Some weeks later, on May 8, 1929, after mutual inspection of the properties, a contract was entered into between plaintiff and defendant for an exchange of the properties. This contract was performed.

Plaintiff alleged that Higbee, who was also made a defendant and dismissed out of the case on the request of plaintiff at the beginning of the trial, had conspired

with Bosick, the other defendant, and that they falsely and fraudulently made as of their own knowledge certain false and untrue statements, with intent to cheat and deceive plaintiff and cause her to trade for the land of defendant Bosick; that these representations were that the Jefferson county land, with improvements, had a reasonable value of between $20,000 and $25,000; that during the previous year berries had been raised and sold for $600; that onions had been raised and sold for $1,500 and a large quantity of apples had been raised and sold. Plaintiff further alleged that she relied on said representations; that Higbee was the agent of Bosick; that she was inexperienced and uninformed as to land values in Jefferson county; that she had sustained damages in the sum of $10,000, and on account of the fraud and wilful deceit and wanton, wilful and reckless disregard of her rights, she was entitled to exemplary damages in the sum of $5,000 and to a body judgment.

Defendant denied that Higbee was his agent, denied the conspiracy and the making of the representations, and for a further answer alleged that Higbee was employed by plaintiff as her agent to sell or trade her property, and while Higbee was such agent of plaintiff, he, Bosick, listed his land for exchange for plaintiff's property; that plaintiff did not rely, and refused to rely, upon any statement of either Higbee or Bosick; that plaintiff and other persons, in whom she had confidence, made independent investigations of defendant's land, and, relying on her independent judgment and the statements of other persons, made the trade. Plaintiff filed a general denial.

The evidence shows that Higbee was first engaged by plaintiff; that defendant then listed his property for the trade; that all of the parties were strangers to each other prior to the beginning of these negotiations; that plaintiff visited defendant's land first with Higbee, the agent, and next with defendant; that plaintiff visited the place four or five times over a period of five or six weeks

before the deal was made, and that she was accompanied by different people; that there was no concealment of anything connected with defendant's land; that defendant took plaintiff to see a neighbor on the north of said land to inquire about the onion crop. Defendant denied telling her that he sold $600 worth of berries, but it is undisputed that he raised a large amount of berries and apples. Defendant assumed mortgages totaling $9,700 on plaintiff's property and took back a mortgage from plaintiff for $9,500 on the land. About two years after the deal was made the $9,500 mortgage became due and was unpaid. Plaintiff had in the meantime sold or traded the land. The owner had made an assignment for the benefit of creditors, and the assignee had offered the equity in the land for sale, and defendant, to save the property from foreclosure, bought the equity for $160. Four real estate dealers gave their opinions as to the value of plaintiff's Denver property, which ranged from $14,000 to $20,000. Five such dealers gave opinions as to the value of defendant's land, which varied from $10,000 to $18,000. The evidence wholly fails to disclose any conspiracy.

Plaintiff seemed to abandon the conspiracy charge and dismissed as to defendant Higbee. She relies upon the agency of Higbee for defendant Bosick, and contends that the alleged fraud of the agent Higbee was the fraud of his principal and that the principal is liable. It appears that she then attempts to establish the agency by the fact that at the close of the deal defendant Bosick agreed to and did pay a part of the commission to Higbee.

If the evidence was otherwise sufficient to support a charge of fraud, we do not think it establishes an agency to which the rule contended for by plaintiff could be applied. Higbee at no time abandoned his agency for plaintiff, but was exercising his authority and directions as such agent when he employed the usual and ordinary means of obtaining a prospect for the sale or exchange of his principal's property. In doing so the defendant

became the prospect who listed his land for the purpose of the trade. If we were inclined to the contention of plaintiff, as applied to the facts of this case, then it could be said that in every case where a sale or trade is consummated through a real estate broker, the broker becomes the agent of both parties, which is not true. The fact that defendant agreed to, and did pay a part of the commission is not determinative, because there is nothing in the evidence to show that such was not paid as a part of the terms of the trade.

While there are several errors assigned that would seem to justify a reversal, we will consider only the matter of the insufficiency of the evidence, and the denial of defendant's motion for a directed verdict on that ground. The motion should have been sustained.

After the exchange of properties was proposed, plaintiff, without interference or concealment on the part of the defendant, regardless of the representations, however positive, if made, had ample time and opportunity to examine into the real facts, and was requested by defendant to so do. So far as such opportunity was concerned, she was on equal footing with defendant, the property was near, plaintiff found it convenient to and did visit and inspect the property with others who were disinterested. She commenced an inquiry and, there being no interference, could have completed same to her fullest satisfaction. This substantially weakens her testimony and allegation of full reliance on defendant's representations. If she didn't want to be otherwise satisfied, she must accept the results of her inexcusable failure.

"The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness." 2 Pomeroy's Equity Jurisprudence (4th Ed.), §893.

"There was nothing done to prevent him from making a full investigation of this property. The means of

knowledge were readily at hand and available to him. If a purchaser of land does not avail himself of the means and opportunities which are afforded him for acquainting himself with the character and value of the land, he will not be heard to say that he has been deceived by vendor's representations. *Farnsworth v. Duffner,* 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931.'' *Troutman v. Stiles,* 87 Colo. 597, 290 Pac. 281.

Judgment reversed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BURKE concur.