No. 15,133.

SLIDE MINES, INC. *v.* DENVER EQUIPMENT COMPANY.
(148 P. [2d] 1009)

Decided May 1, 1944.

Mr. J. F. Little, for plaintiff in error.

Mr. J. G. Holland, for defendant in error.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

In this case defendant in error sued plaintiff in error for the balance due on a promissory note given "to evidence indebtedness consisting of the unpaid balance of the purchase price of certain equipment * * *," and interest. The principal defenses were fraud and breach of warranty, and a counterclaim was based thereon. After issues joined, trial was to the court which found in favor of plaintiff and entered judgment as prayed. Reference will be made to the parties hereinafter as in the court below.

Briefly stated the facts, as they appear in the record, are as follows: Defendant operated a flotations mining mill, and plaintiff was engaged in the business of manufacturing and selling mining equipment. In the latter part of the year 1939, defendant purchased a thickener for mill tailings from plaintiff, which thickener was placed in operation on the property of defendant about

February 1, 1940. The machine collapsed on March 12, 1940, due, allegedly, to improperly designed bands or hoops which held the tank together. Following this incident the parties negotiated for a new thickener and settled their differences. It appears that the original thickener, which plaintiff installed, was equipped with curved rakes which were not satisfactory to defendant. There was some discussion concerning this matter between the officials of the two companies; however, Leland Logue, field manager of plaintiff company, stated to officials of defendant that in his opinion the curved rakes were superior to the others which were being considered, and officials of defendant say that Logue told them that the Dorr Company was using the curved rakes and paying plaintiff company royalty therefor. Subsequently the officials of defendant company agreed to the reinstallation of the curved rakes in the new thickener, the equipment being placed in operation about May 20, 1940. It operated successfully thereafter, and on July 1, 1940, defendant, at the request of plaintiff, wrote a letter in which it was stated that the thickener "is now working satisfactorily, both mechanically and metallurgically," and had been for approximately six weeks, and in view of deferment of the payment of the notes, defendant agreed to pay the notes in full on August 10, following.

Defendant contends that after July 1st, further trouble developed and it had to expend several hundred dollars for digging and cleaning tailing ponds, accumulations in which were caused by the alleged failure of the thickener to operate efficiently and handle its share of the load, and on August 12, 1940, it advised plaintiff company, after making a payment on the note, that "it would be the last payment until the thickener was fixed up." Plaintiff made several unavailing demands for final payment, and in the latter part of December, 1940, it instituted the present action.

In March, 1941, defendant's general manager, a Mr.

Rodgers, called on the Dorr Company and learned that that company was not using plaintiff's curved rakes or paying a royalty therefor. Relying on the statement allegedly made by Mr. Logue a year earlier that the Dorr Company was using plaintiff's rakes and paying a royalty therefor, the defendant pleaded fraud and breach of implied warranty as defenses to the suit.

The trial Court, without making a specific finding on the issue of fraud, stated that in his opinion whatever rights defendant may have had prior to July 1, 1940, they were foreclosed by the terms of the agreement as of that date, and that at that time "the matter was accepted as being satisfactory from every viewpoint * * * and any representations that were made would become immaterial."

Defendant's specification of points reads: "1. The letter of July 1, 1940 (plaintiff's Exhibit E) was not a release, waiver nor accord and satisfaction. 2. There can be no release nor waiver nor accord and satisfaction of a fraud without knowledge of the fraud. 3. Plaintiff had the burden of proving that defendant executed plaintiff's Exhibit E with full knowledge of plaintiff's fraud. 4. The court should have determined whether plaintiff was guilty of fraud. 5. The court should have determined whether there was a breach of an implied warranty by plaintiff."

These points may well be considered together. While the trial court did not make specific findings as to fraud and breach of warranty, whatever error, if there was error, in that connection was harmless, because it sufficiently appears from the record that there was neither fraud nor breach of warranty. Defendant's counsel says: "The only fact in dispute was whether plaintiff's field manager, Mr. Logue, actually made the representations testified to by defendant's witnesses." On this vital issue the evidence was conflicting. Mr. Logue flatly denied making the statements attributed to him, and the statements he admitted making amounted

to no more than his opinion that "the curved rake was better for their particular problem and that is still my opinion," and when Mr. Rodgers, testifying for the defendant, was asked the question: "You understood that, when Mr. Logue said that the curved rakes were more efficient, that that was his [Logue's] opinion, didn't you?" he answered, "Yes." The trial Court apparently believed Logue's evidence, which belief we think is justified. Logue's expressed opinion did not amount to a representation of a material fact. "The general rule is, that a representation cannot form the basis of an action for falsity unless it relates to a matter of fact, as distinguished from opinion." *American National Bank v. Hammond,* 25 Colo. 367, 55 Pac. 1090.

Assuming that the alleged representation was material, it could only be so in relation to the efficacy of the thickener to do the job for which it was intended. On that basis the law conclusively presumes, that where one has the best possible means to learn the true facts for himself as to how a machine operates he may not then rely upon what others may have allegedly said in connection with its operation. So, when defendant in this case signed the letter of July 1st, acknowledging that the thickener was working satisfactorily after six weeks of successful operation, what Logue may have said earlier became wholly immaterial. "It is plain that the plaintiff had full opportunity to learn from his own observation and examination as to the truth or falsity of the alleged misrepresentations, before he paid for and gave his receipt for the machine. The law in such case is well settled and no longer admits of argument." *Emerson-Brantingham Implement Co. v. Wood,* 63 Colo. 130, 165 Pac. 263, a case involving sale of machinery and alleged breach of warranty. See, also, *Troutman v. Stiles,* 87 Colo. 597, 290 Pac. 281; *Nelson v. Van Schaack & Co.,* 87 Colo. 199, 286 Pac. 865; *Brannan v. Collins,* 89 Colo. 492, 4 P. (2d) 684.

Finally, as to fraud, it is not actionable where no

damage is shown. Most of the testimony of defendant in the instant case is an attempt to show damage as a result of the alleged failure of the thickener to function properly, but it is all predicated on the alleged lack of capacity, and as to it the parties had specifically agreed that "Denver [plaintiff] makes no guarantees or representations concerning the capacity of the said thickener." The only expert witness, who had been chosen to act as arbitrator by both sides under the original contract, stated the reason for the trouble with the thickener was that it was overloaded. Another witness stated the reason for the overflow was that "we had an unusually wet spring" and "we got into a batch of unusually talcy ore."

We think the above clearly shows that the alleged fraud was not proved, which disposes of the first three specifications, all predicated on the assumption that fraud existed, and while the trial Court made no specific finding on that issue, his general finding in favor of the plaintiff, under the circumstances, was sufficient. *Henry v. McNealey,* 24 Colo. 456, 50 Pac. 37; *Gold, Silver & Tungsten, Inc. v. Wallace,* 104 Colo. 273, 91 P. (2d) 975. This disposes of the fourth specification.

As to the omission of the Court to make a special finding on the alleged breach of implied warranty, described by counsel as being "that these curved rakes were reasonably fit for the purpose for which they were made and designed to be used," we think his ruling was sufficient when he said, "Although under the testimony here I doubt if such a cause of action could be established." We think a fair inference from the testimony of the expert witnesses is, that the curved rakes were reasonably suitable for the purpose for which they were designed to be used, and if the trial Court's statement, just quoted, should be deemed insufficient, we would say, as we did concerning the question of fraud, that his general finding for the plaintiff was sufficient and conclusive.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE BURKE concur.