**CLEVEROCK ENERGY CORPORATION, Plaintiff-Appellee and Cross-Appellant,**

v.

**Martin TREPEL and Trepel Petroleum Corporation, Defendants-Appellants and Cross-Appellees.**

**Nos. 78–1054, 78–1055.**

United States Court of Appeals, Tenth Circuit.

Argued May 15, 1979.

Decided Nov. 20, 1979.

**1359**

Jeffrey M. Proper of Leibsohn, Eaton, Gooding & Romley, Phoenix, Ariz. (Richard P. Holme of Davis, Graham & Stubbs, Denver, Colo., on brief), for defendants-appellants and cross-appellees.

Phillip C. Gans of Cogswell, Chilson, Dominick & Whitelaw, Denver, Colo., for plaintiff-appellee and cross-appellant.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

### DOVE CREEK PROJECT

In its first count CleveRock Energy Corporation (CleveRock), an oil and gas developer, sued for breach of a contract relating to an oil development project in Dolores County, Colorado (Dove Creek Agreement). The district court found in favor of CleveRock and entered judgment against defendant Trepel, an investor, for the amount due under the contract.

#### *Fraud and Misrepresentation*

By way of counterclaim, Trepel sought recission of the Dove Creek Agreement on the grounds of fraud and misrepresentation

in inducing him to enter the agreement. The trial court found the absence of every element necessary to establish Trepel's claim. The court determined that (1) Cleve-Rock's predictions about the viability of the project were not unreasonable; (2) the allegedly misrepresented and omitted information was either mere opinion or not material; (3) CleveRock had no intent to deceive and held an honest belief as to the truth of all statements; and (4) as an experienced oil and gas investor, Trepel could not have justifiably relied on any of the alleged misrepresentations or omissions. In addition, the court made a specific finding that Trepel was not entitled to recission because he sat on his rights. Trepel appeals each of these findings.

Trepel stresses particularly his view that intent to deceive is not a necessary element of a claim for recission on misrepresentation in Colorado. To the extent Trepel's claim is based on fraud theory, there is no dispute that CleveRock's honest belief and lack of intent to deceive renders Trepel's claim impotent under Colorado law. *See McNeill v. Allen,* 534 P.2d 813, 818 (Colo. App.1975); *Stalos v. Booras,* 34 Colo.App. 252, 528 P.2d 254, 256 (1974); *Bemel Associates, Inc. v. Brown,* 164 Colo. 414, 435 P.2d 407, 409 (1967); *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458, 462 (1937). We need not reach the question whether scienter is necessary in a pure recission case because we are satisfied that the allegedly misrepresented and omitted information was either immaterial or opinion on which Trepel could not have legal reliance.

The standard for appellate review was reiterated in *Joyce v. Davis,* 539 F.2d 1262 (10th Cir. 1976):

> Findings of the trial court will not be disturbed on appeal unless they are held to be clearly erroneous. . . . Appel-

late courts do not try factual issues de novo. . . . On appeal we must view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party.

*Id.* at 1264.

In applying this standard, we consider, first, CleveRock's representations during contract negotiations that the probable drilling costs would be $61,000 for a dry hole and $85,000 for a commercial producer, and that there was a 90% chance of success on the project. The district court made the following findings based on ample evidence in this record: (1) that CleveRock refused to put a ceiling on the total amount of drilling expenses and never assured Trepel that his share of the total expenses would be in the $43,000 range; (2) that both Cleveland, CleveRock's president, and Burnett, Trepel's advisor, informed Trepel of the strong possibility of cost overruns, and that drilling costs and expenses were rapidly rising; (3) that the source for the figures given Trepel, the AFE (authority for expenditures), was an estimate of costs without binding effect in the industry; and (4) that Trepel, an experienced and knowledgeable oil and gas investor,[1] had in hand the same information utilized by CleveRock in evaluating the potential productivity of the well. Record, vol. 3, at 594–98. It is generally recognized that success and cost figures for oil and gas drilling ventures must, in the present state of the art, be estimates, opinions, and predictions of future exigencies, none of which is actionable in Colorado. *See, e. g., United Fire & Casualty Co. v. Nissan Motor Corp.,* 164 Colo. 42, 433 P.2d 769, 771 (1967); *Leece v. Griffin,* 150 Colo. 132, 371 P.2d 264, 265 (1962); *Bell Press, Inc. v. Phillips,* 147 Colo. 461, 364 P.2d 398, 400 (1961); *Slide Mines, Inc. v. Denver Equipment Co.,* 112 Colo. 285, 148 P.2d 1009, 1011 (1944). We can expect no

---

1. The trial court noted that, among other things, Trepel had invested over a million dollars in various oil projects between 1964 and 1974. He had attended special courses and seminars and reviewed the offering circulars of oil and gas investment companies. He was acquainted with the terminology and technical aspects of the business and frequently consulted with the engineers and others experienced in drilling. Record, vol. 3, at 592.

less of a sophisticated investor experienced in the industry.[2]

■ Trepel argues, nonetheless, that opinions of *experts* may constitute misrepresentation. We agree that an expert exception to the opinion rule has been found, but conclude that the facts of this case do not come within its parameters. We consider it significant, as do the sources Trepel cites,[3] that Trepel and his advisor, Burnett, were given all of the basic data upon which CleveRock made its projections, and that Trepel is experienced in the industry. Further, projections of success and cost in oil and gas exploration and drilling ventures are not broadly susceptible to uniform and reliable expert evaluation.

■ Trepel argues that even if CleveRock's success and cost estimates are not actionable, he should be able to rescind on the basis of certain omissions. CleveRock allegedly should have advised Trepel that the use of a larger rig would increase per day drilling costs above prior estimates, that commencing to drill one month deeper into the heart of winter than originally planned (January 31 rather than December 31) might increase costs, and that the east boundary line of the well site might become a problem should unanticipated technical difficulties be encountered. In short, it is argued that CleveRock should have made additional estimates of how certain unknowns would affect his original imprecise estimates.[4] The trial court specifically held that the drilling expense was not material to the overall transaction [5] and that, indeed, CleveRock, in good faith, constantly kept Trepel abreast of the progress of the drilling operation including cost overruns. The court found from the totality of the evidence that the late drilling "was acquiesced in by Trepel and he agreed to the use of the more expensive rig." Record, vol. 3, at 596. These findings are not clearly erroneous.

### Fiduciary Duty

■ Trepel also charges as error the district court's exclusion from trial of a breach of fiduciary duty issue which the court perceived to be beyond the scope of the pretrial order. We agree that the pretrial order in this case is less specific than it might properly have been; however, the order is developed in sufficient detail to warrant the court's exclusion of this issue as a matter beyond its scope. This is particularly true where, as here, the party objecting to the narrower construction of the order failed to take timely advantage of an opportunity to enlarge upon the general terms used in the order.

This court is acutely aware of the evils of the inflexible application of a pretrial order. *See Case v. Abrams,* 352 F.2d 193, 195 (10th

---

2. Trepel argues at length that as a joint venturer with CleveRock he may rely on representations without investigating their truth. To the extent Trepel claims that this relationship establishes a higher or different standard than exists in misrepresentation cases generally, our finding regarding the scope of the pretrial order, *infra,* obviates any need for discussion of this theory. We note, however, that in an action for recission the alleged misrepresentations that form the basis of the claim must have induced the aggrieved party to enter the agreement. At this time, prior to entering the agreement, no relationship other than that of arm's length business negotiations existed between the parties. Trepel was not a joint venturer with CleveRock when he received the initial correspondence outlining the possibilities of the Dove Creek Project.

3. *See, e. g.,* W. Prosser, *Handbook on the Law of Torts* § 109, at 726–27 (4th ed. 1971).

4. We observe that had CleveRock indeed attempted to make predictions concerning ultimate costs and the probabilities of future technical problems, these representations would have been prophecies of future exigencies not actionable under the Colorado authorities already cited.

5. We are reminded that the "requirement of materiality is some assurance that the representee is not merely using the misrepresentation as a pretext for escaping a bargain that he is dissatisfied with on other grounds." Keeton, *Actionable Misrepresentation: Legal Fault as a Requirement: Recission,* 2 Okl.L.Rev. 56, 59 (1949).

Cir. 1965); *Century Refining Co. v. Hall,* 316 F.2d 15, 19–20 (10th Cir. 1963). These evils are aggravated when the pretrial order is unrefined. We recently held that a coarse pretrial order could not be narrowly applied to exclude one of three subtheories fairly encompassed within its general terms. *Trujillo v. Uniroyal Corp.,* 608 F.2d 815 (10th Cir. 1979). However, we should not lose sight of the important policies behind the pretrial order mechanism—*i. e.,* the narrowing of issues to facilitate an efficient trial and to avoid surprise. *See Crist v. Goody,* 31 Colo.App. 496, 507 P.2d 478, 480 (1972).

In this case the Second Pre-Trial Order was filed on August 19, 1976, nearly a year after suit was first brought. The defendant laid out his claims as follows:

(a) *First Counterclaim.* The Defendant Trepel contends that the Plaintiff is liable . . . as a result of the Plaintiff's breach of Exh. A [the Agreement]. The breaches complained of are set forth in paragraph VI.A.2 of this Second Pre-Trial Order. . . .

(b) *Second Counterclaim.* The Defendant Trepel contends that he is entitled to [recission] . . . as a result of certain alleged misrepresentations made by Plaintiff . . . . The misrepresentations are set forth in paragraph VI.A.3 of this Second Pre-Trial Order. . . .

Record, vol. 2, at 250. In setting forth the specific breaches later in the order, in paragraph VI.A.2, Trepel included the following:

(a) failing to commence redrilling the Dove Creek Well before the December 31, 1974 deadline imposed by Exh. A;

(b) failing to furnish the Defendant Trepel with all of the notices, reports and information required under . . . Exh. A;

(c) incurring expenses in excess of authorized amounts.

Record, vol. 2, at 252. Later in the order, Trepel listed under the same heading "Con-

tested Issues of Fact" another general reference to breach:

6. Whether the Plaintiff breached any duties implied by law which he owed to Trepel in connection with Exh. A.

Record, vol. 2, at 254. This general phraseology appearing later in the order must be viewed in light of the specific lists given in paragraph VI.A.2. In addition, to avoid injustice, the trial court gave the parties a stated period in which they could file a "statement detailing with specificity each ground of alleged breach, misrepresentation, waiver and estoppel asserted." Record, vol. 2, at 255. Nearly three months after this period had lapsed, and nearly a year after the pretrial order was entered, Trepel presented his First Further Specifications of Breaches and Non-performance, which contained the first reference to the breach of fiduciary duty theory. Record, vol. 2, at 271. We cannot in these circumstances conclude that the trial judge, who presided over the pretrial conferences of this extensive litigation and had before him the pleadings, motions and various pretrial statements of the parties, abused his discretion in striking the breach of fiduciary duty issue as beyond the scope of the litigation. *See James v. Newspaper Agency Corp.,* 591 F.2d 579, 583 (10th Cir. 1979); *Monod v. Futura, Inc.,* 415 F.2d 1170, 1173 (10th Cir. 1969).

### Costs

■ CleveRock seeks reversal of the trial court's determination disallowing as costs its attorney and expert witness fees attributable to the Dove Creek litigation. We agree with the trial court that CleveRock need not be allowed these expenses.

The Dove Creek Agreement, which itself does not refer to allocation of costs in case of litigation, incorporates the terms of the Operating Agreement only "[i]n the event that either of the parties hereto does not desire to participate in the completion of the test well." Record, vol. 1, at 7. Since this event did not occur and is, moreover,

irrelevant to the litigation, whatever provisions the Operating Agreement may contain relating to CleveRock's right to attorney fees and expert costs are similarly irrelevant. There is nothing in the documents or the relationship of CleveRock and Trepel which requires us to award CleveRock these litigation expenses.

In the absence of specific agreement between the parties, it is well settled that expert witnesses are entitled only to the regular statutory witness fees as part of taxed costs.[6] *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386 (1932); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2678, at 236–37 (1973). This circuit has specifically held that the prevailing party is not entitled to excess fees for experts. *Euler v. Waller*, 295 F.2d 765, 766 (10th Cir. 1961). *See also Union Carbide & Carbon Corp. v. Nisley*, 300 F.2d 561, 586–87 (10th Cir. 1962).

■ CleveRock seeks, in the alternative, to obtain its expert witness fees indirectly through 28 U.S.C. § 1920(4) which includes as taxable costs "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." While CleveRock did not include its experts under this category in its Bill of Costs, it now contends the expert witness fees were an adjunct to the preparation of exhibits. We refuse to interpret § 1920 as a vehicle for circumvention of the established rule on expert witness fees. *See Frigiquip Corp. v. Parker-Hannifin Corp.*, 75 F.R.D. 605, 614 (W.D. Okl.1976) (expert research expenses distinguished from costs for exhibit preparation). The awarding of costs for preparation of exhibits is committed to the discretion of the trial court, *Mikel v. Kerr*, 499 F.2d 1178, 1183 (10th Cir. 1974), and we find no abuse of that discretion here.

## SCOTT FIELD PROJECT

Joined with CleveRock's claim for relief based on the Dove Creek Agreement was a second claim relating to a proposed water flood project in Oklahoma (Scott Field project). The district court concluded after the trial on this claim (1) that there was a valid contract between CleveRock and Trepel Petroleum Company (TPC), rather than Trepel individually, (2) that the contract was breached by TPC, but (3) that Cleve-Rock had failed to establish any damages as a result of the breach. The court dismissed on the merits TPC's counterclaim that the Scott Field Agreement had been orally modified and thereafter breached by Cleve-Rock.

■ TPC vigorously contends on appeal that the Colorado District Court had no personal jurisdiction over TPC and therefore could not enter a valid judgment regarding the Scott Field project. We disagree.

In this diversity proceeding, service of process was predicated on the Colorado long-arm statute, which provides, in pertinent part:

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person . . . to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state . . . . .

Colo.Rev.Stat. § 13–1–124(1) (1973). This statute confers jurisdiction limited only by the bounds of the Fourteenth Amendment, consistent with the standards of due process enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90

---

6. It has been stated that a federal court sitting in diversity may in its discretion, notwithstanding this general rule, enforce "an expressed state policy of taxing expert witness fees as part of costs." *Henlopen Hotel Corp. v. Aetna Ins. Co.*, 38 F.R.D. 155, 161 (D.Del.1965); *DeThomas v. Delta S.S. Lines, Inc.*, 58 F.R.D. 335,

342–43 (D.P.R.1973); *Chemical Bank v. Kimmel*, 68 F.R.D. 679, 681–82 (D.Del.1975). We do not need to consider this postulate as the trial court here chose to follow the general rule and did not purport to apply any contrary, clearly expressed state rule.

L.Ed. 95 (1945) and subsequent cases. In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court elaborated upon the constitutional bounds of jurisdiction, stating: "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 253, 78 S.Ct. at 1240. It is against this test—affirmative conduct invoking the benefits and protections of the forum's laws—that the salient facts of each case must be judged.

The facts of this case cumulatively satisfy this test of due process.[7] *See Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 937 (10th Cir. 1977); *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 155 (5th Cir. 1974). Trepel, president of TPC,[8] came to Colorado and, in the course of various business negotiations, orally agreed to the terms of the Scott Field contract. Under the terms of the executory contract, TPC was obligated to send payment to CleveRock in Colorado for the performance of supervisory and managerial functions. TPC reasonably could have anticipated that CleveRock's duties under the contract would be largely performed at CleveRock's headquarters in Colorado—*i. e.*, the assignment of an interest in the project to TPC, the preparation of the development plan, and the payment of invoices.[9]

Once we determine there are some contacts with the forum, resulting from affirmative acts of the defendant, we must look to one further test of due process. The exercise of jurisdiction must comport with traditional notions of fairness and justice. "[I]t must not be unfair or unreasonable to require the nonresident to defend the suit in the forum." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 497–98 (5th Cir. 1974); 2 *Moore's Federal Practice* ¶ 4.25[5], at 264–66 n.16 (2d ed. 1979). While fairness is not an affirmative basis for granting jurisdiction,[10] unfairness may become a factor in determining whether certain contacts are sufficient.

On the facts of this case, the district court's assertion of jurisdiction was not unfair. TPC has sufficient contact with Colorado to meet the test of due process.

AFFIRMED.

7. Jurisdiction has been sustained on the basis of facts more tenuous than those presented here. *See, e. g., Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494–97 (5th Cir. 1974). While we find doubtful support for the broad language of these cases, it is not necessary to discuss them here where a number of significant factors are present in addition to the performance of the contract by the plaintiff in the forum. *Cf. Pickens v. Hess*, 573 F.2d 380, 383–84 (6th Cir. 1978).

8. While we recognize that Trepel and TPC are separate legal entities, we must consider Trepel's activities in negotiating the Scott Field Agreement before TPC was ·formed in determining jurisdiction. TPC, in later accepting the benefits of a contract negotiated by its promoter, must also accept the jurisdictional burdens *in pari materia.*

9. There may be additional bases for a finding of jurisdiction in this case. For instance, there is evidence that Trepel made the telephone call to Colorado to initiate the business relationship of the parties. There is contradictory evidence, though, and the judge below made no specific finding upon which we can rely.

10. We are not persuaded, as was the trial court, that the ease of mobility is a consideration in determining whether there is jurisdiction over TPC. *See* Record, vol. 6, at 3. The Supreme Court in *Hanson v. Denckla* warned "it is a mistake to assume that [progress in communications and transportation] heralds the eventual demise of all restrictions on" personal jurisdiction.

> Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.

357 U.S. at 251, 78 S.Ct. at 1238.