No. 13,987.

RAMSTETTER ET AL. *v.* MACGINNIS.
(68 P. [2d] 454)

Decided May 10, 1937.

Mr. J. E. McCALL, for plaintiffs in error.

Mr. WILLIAM L. BOATRIGHT, Mr. JEAN S. BREITENSTEIN, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THE defendant in error, plaintiff below, was awarded a deficiency judgment of $2,461.50 in a foreclosure action on a chattel mortgage given by plaintiffs in error, defendants below, to secure payment of a note for $5,500 given in payment for thirteen hundred fifty head of sheep which they purchased from him. The parties will be referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

During the summer of 1934 the plaintiff owned the sheep in question. About the first of August he rented a pasture from defendant, Matilda Ramstetter, and ranged the sheep there, but the pasture was not satisfactory. The defendant had another pasture which was

much better and on which there was plenty of water. On the first of September a deal was made for the sale of the sheep to the defendants who were to range them on the better pasture, but the note and chattel mortgage were not executed until October 1st, said note being due eight months later. The chattel mortgage was in the usual form and contained the provision that if at any time the mortgagee felt himself unsafe and insecure in his security he could declare the note due and payable, take possession of the property and sell the same at such place as he might select.

The pasture on which the sheep were being ranged apparently did not come up to expectations and the sheep began to lose weight. On October 25th when the plaintiff had occasion to go to the pasture he was informed that "they had gone back at least seven pounds per head on the lambs, and ten pounds per head on the ewes. They had shrunk that much * * *."

Becoming alarmed at this condition the plaintiff realized that something had to be done, and so with the knowledge of both of the defendants and with the express approval of Otto Ramstetter the lambs were moved to the Hanks Feed Lot in Denver, and in the latter part of December they were sold and the proceeds over and above the expense of feeding were credited on the note.

Meanwhile, the condition of the rest of the sheep became worse and the herder in charge stated that between September 15 and January 20 about one hundred fifty died, apparently from starvation. During the latter part of December and the first part of January about six hundred more of the sheep were taken to Denver and on the 20th of January the rest of the sheep covered by the mortgage were taken to Denver.

It does not appear that up until this time the plaintiff had definitely decided to or was foreclosing his mortgage.

During the next thirty days, however, because of the great cost of feeding the sheep in Denver and realizing that the defendants were apparently not going to do any-

thing more toward protecting their interest in the sheep, plaintiff decided to foreclose and notified them on the 26th of February that he was foreclosing his mortgage. He did so, selling the rest of the sheep and applying the amount received on the indebtedness of the defendants.

When this suit was filed for the deficiency judgment the defendants urged in their answer, fraud in the sale of the sheep and fraud in the foreclosure, and filed a counterclaim in the sum of $3,000. There is no merit to the allegation of fraud in the sale. The evidence was undisputed that these sheep were on the premises of the defendants for several weeks before they bought them. They had every opportunity to examine them and the defendant Otto Ramstetter talked with the plaintiff about them, and, on the very day after the sale, stated, as the said defendant later testified, "we got them [the sheep] into a narrow place where they could only go by two and three at a time, and I stood on the bank and counted them as they went through." If there was anything wrong with the sheep he had plenty of time to protest before signing the note and chattel mortgage on October 1st, a month later.

The purchaser can not claim to have been deceived and defrauded when he had full opportunity to and did investigate the property which he was buying without interference on the part of the other party to the transaction. *Bosick v. Youngblood*, 95 Colo. 532, 37 P. (2d) 1095, and authorities therein cited.

Nor is there any merit in the claim of fraud or deceit in the foreclosure of the chattel mortgage. The plaintiff had a right under his mortgage and the facts here to foreclose at any time when he felt himself unsafe and insecure, and the evidence is undisputed that the sheep were failing rapidly in the early part of the winter of 1934-5. It may well be that the plaintiff was zealous in protecting his financial interest, but the law does not permit one to stand idly by and make no protest when his property rights are invaded. At no time did the defend-

ants in any way protest when the property was being removed to Denver and when they were notified of the foreclosure neither of them attempted to see the plaintiff to learn what the trouble was and why he was foreclosing.

It is true that the determination of a mortgagee to foreclose because of fear for the safety of his security "must be reached in good faith, and his judgment founded on reasonable grounds and probable cause." *Thomas v. Beirne*, 94 Colo. 429, 30 P. (2d) 863.

Whatever conflict there may have been in the evidence on the matters involved it was resolved by the trial court (sitting without a jury) in favor of the plaintiff, and, "under a well-known and practically universal rule, the conclusions drawn by the trial court from the evidence are binding upon this court sitting as a reviewing tribunal." *Bagley v. Lumbermens Mutual Cas. Co.*, 99 Colo. 300, 62 P. (2d) 469.

The burden of proving fraud was on the defendants, and that burden they wholly failed to sustain. *Dyer v. Bengston*, 71 Colo. 55, 203 Pac. 1101.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE YOUNG concur.